882

James E. WHITE, Plaintiff,

v.

Leon TAYLOR, Individually and as a Police Officer for the City of Morton, Mississippi; Clell Harrell, Individually and as Chief of Police, City of Morton, Mississippi; and the City of Morton, Mississippi, Defendants.

Civ. A. No. J87–0370(B).

United States District Court,
S.D. Mississippi,
Jackson Division.

Jan. 13, 1988.

Brad Sessums, Jackson, Miss., for plaintiff.

Gary E. Friedman and Susan D. Fahey, Jackson, Miss., for defendants.

## MEMORANDUM OPINION AND ORDER

BARBOUR, District Judge.

This cause is before the Court on Motion for Reconsideration and/or to Dismiss the Amended Complaint or for Certification of an Interlocutory Appeal filed by Defendants Leon Taylor, Clell Harrell and the City of Morton, Mississippi. Both Taylor and Harrell are sued in their individual capacities as well as their official capacities as a police officer and chief of police, respectively, for the City of Morton. Defendants previously filed a Motion to Dismiss in support of which they alleged that the Complaint failed to identify a municipal policy and that Defendants Taylor and Harrell were entitled to qualified immunity. Prior to ruling on the motion, this Court, *sua sponte*, granted Plaintiff James E. White leave to amend his Complaint per *Elliott v. Perez*, 751 F.2d 1472, 1482 (5th Cir.1985) and *O'Quinn v. Manuel*, 773 F.2d 605, 610 (5th Cir.1985). The Complaint was so amended and this Court denied the Motion to Dismiss. Defendants now challenge that ruling through their Motion for Reconsideration, and assert that they may appeal, as a matter of right, the decision on qualified immunity and seek interlocutory appeal, pursuant to 28 U.S.C. § 1292(b) on the issues of whether the Plaintiff has met pleading requirements under 42 U.S.C. § 1983 and also whether he has stated a claim pursuant to the Fifth, Sixth and Fourteenth Amendments to the United States Constitution. In rendering its decision, the Court has reviewed the memoranda submitted by the parties.

Plaintiff alleges the following in his Amended Complaint. On November 6, 1985, Harrell, acting in his capacity as chief of police for the City of Morton, hired Taylor as a law enforcement officer. Pursuant to *Miss.Code Ann.* § 45-6-11 (1981), Taylor had one year from the date of his hiring within which to obtain his certification from the State of Mississippi Board on Law Enforcement Standards and Training. Failure to obtain such certification within the designated time would result in an officer's loss of his authority to exercise his powers generally and in particular the loss of his authority to exercise the power of arrest. *Miss.Code Ann.* § 45-6-17 (1981). As of November 6, 1986, Taylor had not obtained his certificate and therefore after that date did not have the authority to exercise the power of a law enforcement officer. Plaintiff alleges that both Harrell and Morton were aware that Taylor had not obtained his certification within the specified time period but nonetheless allowed Taylor to continue in his employment with the City as a law enforcement officer.

On the night of May 29, 1987, Plaintiff avers that he was driving his pickup truck through Morton and at all times was obeying the applicable traffic laws and regulations. Taylor was on duty that night and operating a police vehicle owned by the City of Morton. White alleges that Taylor stopped him and accused him of operating his truck while under the influence of intoxicating liquor. Consequently, White requested to be taken to the police station to be administered a breathalizer test to verify that he had not been drinking intoxicating beverages. White alleges that Taylor, without probable cause, placed him under arrest for disorderly conduct. Taylor took White to the police station but failed to book him and investigate White for bail pursuant to *Miss.Code Ann.* § 99–3–18 (West Supp.1986) (allowing misdemeanor arrestees to be released on their own recognizance at discretion of police officer). Instead, Taylor placed White into a locked and barred jail cell and there imprisoned him for approximately eight hours. White alleges that during this period he was never taken before a judge; never charged with a crime; never allowed to make bail, post bond or be released on his own recognizance; was not informed of his right to advice of counsel; was not permitted to contact his attorney or his family by telephone; and was not informed of any formal charges that were to be placed against him. At the end of this period, White was released from jail on his written promise to appear pursuant to *Miss.Code Ann.* § 99–3–18.

White maintains in his Amended Complaint that Taylor acted wilfully, knowingly and purposefully with the specific intent to deprive him of his right to be free from illegal seizure of his person, unlawful arrest, illegal detention and imprisonment. Moreover, he was denied the right to release on his own recognizance or reasonable bail and timely and effective assistance and advice of counsel. White further maintains that Defendants Harrell and the City of Morton are responsible for the actions of Taylor because they allowed Taylor to be employed by the City even though they knew he was not certified pursuant to *Miss.Code Ann.* § 45–6–11 and was therefore not authorized to exercise the power of arrest. By allowing Taylor's continued employment, these Defendants are alleged to have adopted a policy, the natural consequence of which was to deny the constitutional rights of any person arrested by Taylor and that they allowed Taylor's continued employment "even though his training was so poor as to make future police misconduct on his part inevitable."

■ In ruling on a Motion to Dismiss, the district court must accept all well plead averments as true and resolve factual disputes in favor of the Plaintiff. *O'Quinn v. Manuel*, 767 F.2d 174, 177 (5th Cir.1985) (*citing Rankin v. City of Wichita Falls*, 762 F.2d 444, 445–46 (5th Cir.1985)). The Court may not look outside the pleadings or grant a dismissal "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *O'Quinn*, 767 F.2d at 177 (*quoting Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957)). Although in Section 1983 cases the plaintiff is required to state specific facts rather than conclusory allegations, *Elliott v. Perez*, 751 F.2d 1472 1479 (5th Cir.1985), the Court of Appeals for the Fifth Circuit has stated "still, we remain faithful to the liberal notice-pleading requirements of the Federal Rules, and note that 'often the litigants may plead generally and discover the precise factual basis for their claim through equally liberal pretrial discovery procedures.'" *O'Quinn*, 767 F.2d at 177 (*quoting Auster Oil & Gas, Inc. v. Stream*, 764 F.2d 381, 385–87 (5th Cir.1985)). Having laid the factual predicate and discussed the relevant standard of review, this Court states for the record its reasons for denying the dismissal on the basis of qualified immunity. *See Schaper v. City of Huntsville*, 813 F.2d 709, 713 (5th Cir.1987).

■ The Civil Rights Act of 1871, codified in pertinent part at 42 U.S.C. § 1983, provides as follows:

Every person who, under color of any statute, ordinance, regulation, custom, or

usage of any State ..., subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

By its own terms, the statute does not create substantive rights; it simply provides remedies for deprivation of rights established elsewhere. *Oklahoma City v. Tuttle*, 471 U.S. 808, 816, 105 S.Ct. 2427, 2432, 85 L.Ed.2d 791 (1985) (*citing Baker v. McCollan*, 443 U.S. 137, 140, 144 n. 3, 99 S.Ct. 2689, 2694 n. 3, 61 L.Ed.2d 433 (1979)). Therefore, to state a cause of action under Section 1983, the plaintiff must allege that the defendant deprived him of a right secured by the Constitution or laws of the United States and that in doing so, the defendant acted under color of state law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150, 90 S.Ct. 1598, 1604, 26 L.Ed.2d 142 (1970).

In the case *sub judice,* all Defendants were either officials or entities who acted themselves or through their agents under color of state law; therefore, to state a claim and to also overcome the defense of qualified immunity asserted in the motion to dismiss, White must demonstrate violation of a clearly established constitutional right. *See Velasquez v. Senko,* 643 F.Supp. 1172, 1176 (N.D.Cal.1986). Before embarking on this analysis, the Court notes that the *Conley* standard "exhorts us to excuse mere artless drafting and to overlook superfluous argument in the interest of locating the substance of the pleader's claim." *Jacquez v. Procunier,* 801 F.2d 789 at 791 (5th Cir.1986) (*quoting Jamieson v. Shaw,* 772 F.2d 1205, 1209 (5th Cir. 1985)).

White claims that his rights to be free from illegal seizure of his person, from unlawful arrest and from illegal detention and imprisonment were violated. The Constitutional validity of a warrantless arrest turns upon whether, at the moment the arrest was made, the officers had probable cause to make it—whether at that moment the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense. *Beck v. Ohio,* 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142 (1964). The Court of Appeals for the Fifth Circuit has recognized that Section 1983 may provide a cause of action against a police officer for an arrest made without probable cause. *See Hinshaw v. Doffer,* 785 F.2d 1260, 1266 (5th Cir.1986) (*citing Vela v. White,* 703 F.2d 147 (5th Cir.1983) and *Trejo v. Perez,* 693 F.2d 482 (5th Cir.1982)). In two cases, the appellate court has upheld verdicts entered against police officers who arrested civil rights plaintiffs under the Texas disorderly conduct statute without probable cause. *Hinshaw,* 785 F.2d at 1266 (jury trial); *Vela,* 703 F.2d at 152 (tried without jury). The same court has also overruled a district court's dismissal for failure to state a claim where a similar Fourth Amendment violation was alleged. *Jamieson v. Shaw,* 772 F.2d 1205, 1209–10 (5th Cir.1985) (reasonableness of seizure of a person). Similarly, other district courts, when faced with a Section 1983 suit wherein the plaintiff alleges lack of probable cause to arrest, and defendant raises the qualified immunity defense, have denied summary judgment on the ground of qualified immunity. *See Greenberg v. Mynczywor,* 667 F.Supp. 901, 909 (D.N.H.1987); *Woodley v. Town of Nantucket,* 645 F.Supp. 1365, 1371 (D.Mass.1986).

It is clear that as a matter of law arrest without probable cause violates rights clearly established under the Fourth Amendment and that an officer who makes such an arrest is not entitled, solely as a matter of law, to qualified immunity. The Complaint is inartfully drafted inasmuch as it fails to cite the Fourth Amendment. Nonetheless, following the guidance of the Fifth Circuit, this Court has examined the substance of the allegations.

■ In cases involving the absence of probable cause for arrest, liability of the police chief and the municipality is often premised on the failure to train or supervise the officer in question. This will be elaborated upon below. The Complaint is poorly drafted inasmuch as it pleads facts as constitutional violations when those facts support the proposition that Taylor was inadequately trained and insufficiently supervised. The lack of certification, the failure to follow bail procedures mandated by *Miss. Code Ann.* §§ 99–13–17 and 99–13–18 (West Supp.1986) and the denial of access to a telephone, instead of being constitutional violations, are evidence, if they can be proven, that Taylor was not adequately trained or supervised. Accordingly, the Court turns to the Motion to Reconsider as it relates to the liability of Police Chief Harrell and the City of Morton.

■ As is the case with municipalities, Section 1983 does not allow for vicarious liability or *respondeat superior* as a basis for holding a police chief liable for the acts of his officers. *Hinshaw v. Doffer*, 785 F.2d 1260, 1263 (5th Cir.1986). "For a police chief to incur Section 1983 liability, he 'must either be personally involved in the acts causing the deprivation of a person's constitutional rights, or there must be a causal connection between an act of the police chief and the constitutional violation sought to be redressed.'" *Id.* (*quoting Harvey v. Andrist*, 754 F.2d 569, 572 (5th Cir.1985)). *Hinshaw* quoted at length from *Bowen v. Watkins*, 669 F.2d 979, 988 (5th Cir.1982) to the effect that

> [a]lthough supervisory officials cannot be held liable solely on the basis of their employer-employee relationship with a tortfeasor, they may be liable when their own action or inaction, including a failure to supervise that amounts to gross negligence or deliberate indifference, is a proximate cause of the constitutional violation ... the plaintiffs must show a failure to supervise properly that caused the harm. Usually a failure to supervise gives rise to section 1983 liability only in those situations in which there is a history of widespread abuse. Then knowledge may be imputed to the supervisory

official, and he can be found to have caused the later violation by his failure to prevent it.

*Hinshaw*, 785 F.2d at 1263. Therefore, a plaintiff must show that (1) the police chief failed to supervise or train an officer, (2) a causal connection between the failure to supervise or train and the violation of plaintiff's rights, and (3) that the failure to supervise or train amounted to gross negligence or deliberate indifference. *Id.* The Court of Appeals for the Fifth Circuit has held that to support a Section 1983 cause of action for failure to train, the plaintiff must demonstrate that the "failure constitute[s] gross negligence amounting to conscious indifference" and either a pattern of similar incidents *or* that "serious incompetence or misbehavior was general or widespread throughout the police force." *Wells v. Rushing*, 760 F.2d 660, 661 (5th Cir.1985) (quoting *Languirand v. Hayden*, 717 F.2d 220, 227–28 (5th Cir.1983), *cert. denied sub. nom. Languirand v. Pass Christian*, 467 U.S. 1215, 104 S.Ct. 2656, 81 L.Ed.2d 363 (1984)). However, such a pattern of widespread abuse or misbehavior throughout a police force need not be pled. *Jamieson*, 772 F.2d at 1213.

■ In the Amended Complaint, White alleges that Harrell and the City of Morton allowed Taylor to continue in his employ as a policeman for the city "even though his training was so poor as to make future police misconduct on his part inevitable." Moreover, White alleges that Harrell and the City of Morton were aware that Taylor had not obtained his certification within the time prescribed by law and that on the date of the incident giving rise to the litigation, Taylor did not have the authority to act as a law enforcement officer. Thus, White alleges that Harrell and the City of Morton, in allowing Taylor to continue as a police officer, violated their duty to the public to maintain a competent and properly qualified police force. The Court is of the opinion that the aforementioned facts, if they can be proved, present sufficient evidence from which a jury could find that deliberate indifference or gross negligence on the part of Police Chief Harrell caused White's

injury. However, this should not foreclose White from making discovery into the issue of whether serious incompetence or misbehavior was general or widespread in the City's police force.[1] *See also Woodley,* 645 F.Supp. at 1372 (police chief not entitled to dismissal on qualified immunity where there was evidence indicating that he should have known that officer lacked training).

The Court of Appeals for the Fifth Circuit has applied the same analysis concerning failure to train to municipalities as has been applied to direct supervisory officials. *See Languirand v. Hayden,* 717 F.2d 220, 227–28 (5th Cir.1983), *cert. denied sub. nom. Languirand v. Pass Christian,* 467 U.S. 1215, 104 S.Ct. 2656, 81 L.Ed.2d 363 (1984). However, a different panel of the same appellate court has also followed a more traditional *Monell* analysis in a failure to train case. Therein, the court stated that "there must be (1) a policy, (2) of the city's policymaker (3) that causes (4) the plaintiff to be subjected to a deprivation of constitutional right." *Grandstaff v. City of Borger,* 767 F.2d 161, 169 (5th Cir.1985). In discussing inadequate training as a cause of a constitutional violation such that a municipality may be liable under *Monell,* the Court stated that "the causal requirement ... must be more than *de facto;* the policy must be 'the moving force behind the constitutional violation.'" *Id. (quoting Monell v. Department of Social Services,* 436 U.S. 658, 694, 98 S.Ct. 2018, 2038, 56 L.Ed.2d 611 (1985)). *See also, Vela v. White,* 703 F.2d 147, 153 (5th Cir.1983).

█ In the Amended Complaint, the City of Morton is alleged to be responsible for the acts of Taylor because it allowed him to continue as a policeman for the City even though it knew he had not obtained his required certification and was not legally authorized to exercise the power of arrest and that by so doing it promoted a custom or policy sanctioning the type of action which caused the violation of Plaintiff's

constitutional rights. The Court is of the opinion that the actions alleged in the Amended Complaint are sufficient to satisfy either the gross indifference requirement or the more traditional policy requirement as discussed in the above-cited cases. Accordingly, the Court concludes that the suit against the City of Morton should not be dismissed for failure to allege a policy.

Defendants assert that this Court's denial of qualified immunity is appealable as a matter of right under *Mitchell v. Forsyth,* 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1984). In that case, the United States Supreme Court held

> that a district court's denial of a claim of qualified immunity, *to the extent that it turns on an issue of law,* is an appealable "final decision" within the meaning of 28 U.S.C. § 1291 notwithstanding the absence of a final judgment.

*Mitchell,* 472 U.S. at 530, 105 S.Ct. at 2817 (emphasis supplied). In some cases the Court of Appeals for the Fifth Circuit has omitted the issue of law language. *See Jacquez v. Procunier,* 801 F.2d 789, 791 (5th Cir.1986); *Brown v. Texas A & M Univ.,* 804 F.2d 327, 331–32 (5th Cir.1986); *Gagne v. City of Galveston,* 805 F.2d 558, 559 n. 1 (5th Cir.1986); *but see Stevens v. Corbell,* 798 F.2d 120, 121 (5th Cir.1986) (appealable only when district court denies plea of immunity on an issue of law). The most recent opinion from that court, after citing verbatim from the language of *Forsyth,* stated that appellate review of motions to dismiss is necessarily limited to questions of law but entails consideration of the factual allegations which constitute plaintiff's claim. *Schaper v. City of Huntsville,* 813 F.2d 709, 713 (5th Cir. 1987), *reh'g en banc denied,* 818 F.2d 865 (5th Cir.1987). Accordingly, the *Schaper* court directed district courts to state for the record their reasons for denying a plea of qualified immunity and this Court has now complied with that directive.

---

1. Implicit in the preceding discussion is that Defendant Harrell failed to train or supervise concerning constitutionally proper arrests and other police procedures. It cannot be reasonably maintained that the chief of police could not be aware of the clearly established constitutional right to be free from arrest without probable cause. Thus, Harrell, like Taylor, is not entitled to dismissal on the basis of qualified immunity.

■ One district court has offered a helpful explanation of how judges should consider the issue of qualified immunity on motions to dismiss and for summary judgment after *Forsyth* and *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982),

> Read together, the *Harlow* and *Forsyth* cases require a two-step approach to the question of qualified immunity. First, a district court should determine whether the complaint on its face alleges violation of clearly established law. This is akin to stating claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6). If the complaint fails in this regard, a defendant is entitled to dismissal on the ground of qualified immunity. If the facts alleged support a claim of violation of clearly established law, however, the district court must allow sufficient discovery to support a ruling on any defense motion for summary judgment.

*Velasquez v. Senko,* 643 F.Supp. 1172, 1176–77 (N.D.Cal.1986). As previously stated, the facts alleged by White show violation of clearly established constitutional right by all of the Defendants.[2] Thus, Defendants Taylor and Harrell are not entitled to appeal as a matter of right this Court's refusal to dismiss this law suit on the ground of qualified immunity.

■ In the event that this Court denies their Motion for Reconsideration, Defendants seek certification from this Court of an interlocutory appeal to the Fifth Circuit pursuant to 28 U.S.C. § 1292(b) on the issues of whether Plaintiff has sufficiently stated a municipal policy and a claim pursuant to the Fifth, Sixth and Fourteenth Amendments. In pertinent part, that statute provides that

> [W]hen a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which

there is substantial ground for difference of opinion, and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order.

28 U.S.C. § 1292(b) (Supp.1986). By its own terms, the statute establishes three criteria; that the order must involve a controlling question of law; as to which there is a substantial ground for difference of opinion; and that the immediate appeal may materially advance the ultimate termination of the litigation. The Court is of the opinion that the criteria cannot be satisfied in this case. The issue of policy is a controlling question of law only as to one Defendant, the City of Morton. Although there *may* be substantial ground for difference of opinion as to whether a policy has been adequately pled, the Court is of the opinion that an immediate appeal would not materially advance the ultimate termination of the litigation because Defendants, contrary to their assertions, may not as a matter of right appeal the issue of qualified immunity. The Court of Appeals for the Fifth Circuit has cautioned that "permission to appeal is granted sparingly, not automatically." *Alabama Labor Council v. State of Alabama,* 453 F.2d 922, 924 (5th Cir.1972). Following that admonition and the statutory criteria of Section 1292(b), the Court declines to certify an interlocutory appeal.

Accordingly, it is ordered that Defendants' Motion for Reconsideration and to Dismiss the Amended Complaint or for Certification of an Interlocutory Appeal is denied.

---

**2.** This does not mean that qualified immunity may not be employed at a later date. "Even if plaintiff's complaint adequately alleges the commission of acts that violated clearly established law, the defendant is entitled to summary judgment if discovery fails to uncover evidence sufficient to create a genuine issue as to whether the defendant in fact committed those acts." *Mitchell v. Forsyth,* 472 U.S. at 526, 105 S.Ct. at 2816.