Dear Sheriff Couvillon:
You first ask this office to advise you whether or not the Vermilion Parish police jury must reimburse the sheriff's office for expenses associated with (1) transporting pre-trial detainees and parish sentenced inmates to court, medical facilities, and to and from overflow facilities, and (2) transporting persons subject to either a coroner's order for protective custody or a physician's emergency certificate.
In the instances described, you advise that you use off-duty deputies and pay them overtime to transport these individuals. The police jury refuses to reimburse your office for the off-duty overtime portion of the billing as a transportation expense.
While the sheriff is responsible for the transportation of prisoners to places other than prisons, such as hospitals, courthouses, and other institutions, the police jury must provide reimbursement in accordance with reimbursement rates set by state law.
With respect to the transportation of parish inmates and pre-trial detainees between jail facilities to and from other institutions, the police jury must reimburse the sheriff according to the rates established by R.S. 33:1432(4), stating:
 (4) For transportation of prisoners to the penitentiary or other prison, for every mile which the sheriff or his deputies necessarily travel in going to and returning from, a mileage rate equal to the mileage rate established by the Division of Administration for the use of state owned vehicles. In addition, not more than two deputies shall be compensated at the rate of ten cents per mile for *Page 2 
every mile which is necessarily traveled in going to such penitentiary or other prison; and for the expense of each prisoner conveyed, five cents per mile for going only, but not less than five dollars for each prisoner.
Note further that R.S. 15:706(D) governs the transportation of prisoners who are incarcerated in parish jail and whose presence is required in a criminal or civil court proceeding in another parish. According to R.S. 15:706(D)(2), it is the responsibility of the sheriff of the parish in which the court proceeding is to be held to transport the prisoner being housed outside of the parish to and from that proceeding. The governing authority of the parish in which the court proceeding is to be held must reimburse the sheriff for the expenses incurred in transporting the prisoner housed outside of the Parish. See R.S. 15:706(D)(2).
Further, those Vermillion parish-sentenced inmates who must be transported to overflow facilities elsewhere nonetheless remain the responsibility of Vermillion parish with respect to reimbursement of those transportation expenses authorized by R.S.33:1432 quoted above.
The sheriff must transport order of protective custody (OPC) and coroner emergency certificates (CEC) patients. In Attorney General Opinions 05-0061 and 00-0386, this office determined that the sheriff's office must transport an individual who is the subject of a physician's emergency certificate to the appropriate treatment facility. R.S. 28:53(F) states:
 F. An emergency certificate shall constitute legal authority to transport a patient to a treatment facility and shall permit the director of such treatment facility to detain the patient for diagnosis and treatment for a period not to exceed fifteen days, and to return the patient to the facility if he is absent with or without permission during authorized periods of detention. If necessary, peace officers shall apprehend and transport, or ambulance services, under appropriate circumstances, may locate and transport, a patient on whom an emergency certificate has been completed to a treatment facility. . . . .
Further, pursuant to R.S. 28:53.2, the sheriff must transport persons subject to an order of protective custody. R.S.28:53.2(A) states:
 A. Any parish coroner or judge of a court of competent jurisdiction may order a person to be taken into protective custody and transported to a treatment facility or the office of the coroner for immediate examination when a peace officer or other credible person executes a statement under private signature specifying that, to the best of his knowledge and belief, the person is mentally *Page 3 
ill or suffering from substance abuse and is in need of immediate treatment to protect the person or others from physical harm . . .
While the sheriff's department must transport mentally ill patients, the department is not required to pay for the service and must be reimbursed. Note that in Attorney General Opinion 00-363 this office determined that "the patient's place of residence is imperative in determining which parish is to reimburse an agency or ambulance company for the cost of transport in an inter-parish transport", and observed that R.S.28:142 enumerates the responsible paying parties, and quoted that statute as follows:
 If financially able, the patient or his legally responsible relations shall pay all costs incident to transporting the patient to the mental hospital; otherwise the department [Department of Health and Human Resources], in the case of a nonresident, or the parish in which the hearing was held, in the case of a resident, shall pay these costs. If a patient's domicile is in a parish other than that in which the hearing was held, the former parish shall reimburse the latter for these costs.
 The provisions relative to responsibility for costs are set forth in R.S. 28:142 and R.S. 28:145, stating:
 § 142. Costs of transportation
 If financially able, the patient or his legally responsible relative shall pay all the costs incident to transporting the patient to the mental hospital; otherwise the department, in the case of a nonresident, or the parish in which the hearing was held, in the case of a resident, shall pay these costs. If a patient's domicile is in a parish other than that in which the hearing was held, the former parish shall reimburse the latter for these costs.
 Fees for transporting patients shall be in accordance with the special laws establishing fees for transporting prisoners.
 * * * * *
 § 145. Costs of transfer
 The person requesting the transfer shall pay the costs of transferring a patient between institutions. The department shall pay the costs of transfers made at its request.
Note that the general authority of the sheriff to hire his deputies and fix their working conditions and rate of compensation is contained in R.S. 33:1421, et seq. R.S.33:1422 states: *Page 4 
 A sheriff . . . shall pay from the sheriff's salary fund . . . all expenses authorized by law which are incurred in the performance of his duties, including, but not restricted to, clerical expenses, the salary of the sheriff, and of all the deputies. . . .
This office previously opined in Attorney General Opinion 76-1829:
 It appears by reasonable inference that part of the salary of deputy sheriffs would include compensation earned for legitimate overtime services performed by the deputy sheriffs. If that were not enough, since the listing of R.S. 33:1422(A) is obviously not exclusive, payment out of the salary fund for legitimate overtime would reasonably be an expense payable against the sheriff's salary fund.
While a deputy sheriff is to be paid for legitimate overtime services performed by him out of the sheriff's salary fund pursuant to the provisions of R.S. 33:1422, the sheriff may nonetheless seek reimbursement from the parish for the overtime as a transportation expense in every instance cited above in which the parish is responsible for transport.
In the often cited case of Amiss v. Dumas, 411 So.2d 1137
(La. 1982), reviewing R.S. 33:1432 among several other statutes, the court stated at page 1141:
 The general scheme which we gather from reading of all of the statutes is that the City-Parish is responsible for the expenses of establishing, maintaining and operating the jail and for all the expenses of feeding, clothing, and providing medical treatment to the prisoners while the sheriff has the duty of operating the jail and seeing to it that the prisoners are properly cared for, fed and clothed.
 These statutes, in effect, established that prisoners incarcerated in the parish jail, either awaiting trial or serving parish sentences, are wards of the parish and the sheriff is simply the warden ("keeper") of the parish jail.
 * * * * *
 By the very act of fixing compensation to be paid to the sheriffs by the governing authority, the statute, in effect, recognizes that the ultimate responsibility for the expenses associated with feeding the prisoners rests with the governing authority and not with the sheriffs. We find no provision in any law which mandates that any of the duties required to be performed by the sheriffs are to be at their expense. There certainly would be no need for *Page 5 compensating the sheriffs for performance of these duties if they were to be at their expense in the first instance. (Emphasis added).
Thus, in accord with Amiss, supra, the reimbursable expenses associated with transport are not limited to the mileage rates set forth in R.S. 33:1432(4). The sheriff may seek reimbursement for the overtime paid his deputies for providing transportation services.
This conclusion is in accord with previous opinions of this office. In Attorney General Opinion 79-1467 this office determined that the police jury was responsible for the payment of overtime expenses of security personnel assigned to guard prisoners transported to out-of-town facilities.
Further, in Attorney General Opinion 05-0263, this office responded to a sheriff seeking reimbursement from the parish of overtime paid his deputies as a transportation expense for PEC transports. The parish government refused reimbursement of the overtime wages and mileage utilized for the transportation. This office concluded the sheriff was owed the overtime as reimbursement and stated:
 We agree with your interpretation that the parish government must reimburse the sheriff all expenses incurred for PEC transport when the patient is a resident of the parish and for a non-resident, the sheriff must seek reimbursement through that patient's respective parish or state agency, if the PEC was requested by a state agency when the patient or family is not financially able to pay the expense.
The parish does not owe the sheriff reimbursement for transportation expenses directly related to Department of Correction inmates, federal inmates, and out-of-parish inmates. These transportation expenses are expenses "which the Sheriff should address with the DOC or other governmental bodies. Any identifiable variable expense associated solely with a DOC, federal or out-of-parish inmates, such as the cost of gasoline for transportation of such inmate to the hospital, should be paid by the Sheriff out of the $22.39 per diem or contractual per diem pertaining to those inmates respectively." See Prator vs. CaddoParish, 900 So.2d 350 (La.App. 2nd Cir. 2005).
Your second question concerns the payment of salaries and benefits for the following persons employed at the parish jail: an LPN nurse, an EMT, and a medical clerk, a food service supervisor, and two food service clerks.
The salaries of the aforementioned individuals must be borne by the parish, as these items fall within the statutory responsibilities of the parish to provide for the *Page 6 
expenses associated with feeding prisoners and providing medical treatment to the prisoners.
In Amiss v. Dumas, 411 So.2d 1137 (La. 1982), the court rejected the governing authority's argument that the parish need provide a salary for only a physician. The court in Amiss
stated at page 1141:
 La. R.S. 15:702 places the responsibility for the physical maintenance of all parish jails and prisons upon the governing authority of each parish. No distinction is made therein between major and minor repairs, major and minor appliances, the general responsibility of the parish governing authority to maintain the prison and the supplies necessary for daily routine maintenance. This statute, along with La. R.S. 33:4715, which requires that the governing authority provide a "good and sufficient jail", mandates that the parish governing authority is responsible for establishing and maintaining the parish prison which includes all equipment and supplies necessary for the establishment and proper maintenance of the jail.
 For these reasons, we find that the trial court erred in holding the Sheriff of East Baton Rouge financially responsible for supplies necessary for cleaning and routine daily maintenance; for all accessory medical personnel and for those items (minor appliances and utensils) necessary to prepare food for the prison inmates. (Emphasis added).
The court held the parish responsible for "all accessory medical personnel." Following the dictates of Amiss, supra,
we conclude those salaries of the aforementioned medical personnel are the responsibility of the parish.
For similar reasons, those salaries of the cooks are the responsibility of the parish. We requote the language of the court in Amiss, supra, at page 1141, which proves instructive:
 While it is true that La. R.S. 15:705 requires that the sheriff feed each prisoner, La. R.S.33:1432 fixes compensation to be paid to the sheriff by the parish governing authority for the feeding of the prisoners. The compensation paid to the sheriff covers only the cost of the food consumed by the prisoners. By the very act of fixing compensation to be paid to the sheriffs by the governing authority, the statute, in effect, recognizes that the ultimate responsibility for the expenses associated with feeding the prisoners rests with the governing authority and not with the sheriffs. We find no provision in any law which mandates that *Page 7 any of the duties required to be performed by the sheriffs are to be at their expense. There certainly would be no need for compensating the sheriffs for performance of these duties if they were to be at their expense in the first instance. (Emphasis added).
In Attorney General Opinion 84-398, this office concluded that "the ultimate responsibility of feeding prisoners rests with the governing authority and not with the sheriff . . . (where) there is demonstrable evidence that prisoners' needs are not being met because of a shortage of employees, the duty to hire an extra employee to feed prisoners rests with the parish."
We note that in your correspondence, you provided a "bed count" reflecting that one-third of the prison population are non-parish inmates; however, in this instance, those percentages are irrelevant to our determination herein. In the recent case ofPrator vs. Caddo Parish, 900 So.2d 350 (La.App. 2nd Cir. 2005), the parish asked to be reimbursed for "medical expenses, including medical consumables, personnel costs, and costs of medical services provided by outside health care providers, for DOC, federal, and out-of-state prisoners." The court rejected a 25% percentage credit (the non-parish inmates amounted to approximately 25% of the prison population) stating:
 The $3.50 per diem owed by the parish and the $22.39 per diem owed by the DOC address the "keeping and feeding" expenses of parish and state prisoners, respectively. By implication, La. R.S. 15:824(B)(1)(b) indicates that ordinary medical expenses of the prisoners are included in these two "keeping and feeding" per diem amounts. Of course, the Sheriff's obligation to provide sufficient and wholesome food and suitable clothing under La. R.S. 15:705(A)(1) would also be covered by each of these two statutory per diem reimbursements. Aside from these and other personal and variable costs clearly associated with each prisoner on a daily basis, the fixed costs and more general costs associated with the maintenance of the prison do not appear to be addressed by the legislature in these per diem statutes. Therefore, those costs, which would be present on any given day for the prison and its staff even in the absence of all prisoners, remain the obligation of the parish under La. R.S. 33:4715.
There is no statutory authority allowing the Parish a credit against its fixed costs for the jail. Attempts to impose a share of fixed costs for jails have been rejected in Webre v. Wilson,672 So.2d 1124 (La.App. 1st Cir. 1996), and City ofShreveport v. Caddo Parish, 658 So.2d 786 (La.App. 2d Cir. 1995), writ denied, 663 So.2d 728 (La. 1995); and writdenied, 663 So.2d 729 (La. 1995). *Page 8 
In City of Shreveport, supra, the city sought a credit for fixed expenses for housing felony pretrial detainees. In that case, the court held the city was not entitled to recover fixed costs which it found to be present even without the presence of the felony pretrial detainees.
The costs of medical and food personnel, pursuant to Prator,
are fixed costs which would be present in the absence of non-parish inmates. We conclude the parish is responsible for the salaries of the medical and food service personnel.
We hope the foregoing is helpful to you. Should you have other questions in which we may provide assistance, please contact this office.
 Very truly yours,
 CHARLES C. FOTI, JR.
 Attorney General
 BY: ______________________________
 KERRY L. KILPATRICK
 Assistant Attorney General